IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>MANUEL HIDALGO-TAVERA,<br><br>**Defendant.** | **Criminal No.** 19-794 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Defendant Manuel Hidalgo-Tavera ("Hidalgo") requests that the Court compel the United States to provide him with an opportunity to interview cooperating witnesses prior to trial. (Docket No. 45.) He also moves to continue the trial, to exclude expert testimony from Frank DiGregorio ("DiGregorio") and Arlene Acosta ("Acosta"), and to compel production of evidence relating to a Customs and Border Patrol ("CBP") canine. (Docket Nos. 62, 67, 68 & 71.) Lastly, Hidalgo requests that the Court hold a Daubert hearing. (Docket No. 83.)

For the reasons set forth below, the motions for a Daubert hearing, to interview cooperating witnesses, and to continue the trial are **DENIED WITH PREJUDICE**. (Docket Nos. 45, 62 & 83.) Hidalgo's motion to compel production of evidence relating to the CBP canine is **DENIED AS MOOT**. (Docket No. 71.) His motion to

exclude expert testimony from DiGregorio is **GRANTED IN PART** and **DENIED IN PART**. (Docket No. 67.) Lastly, Hidalgo's motion to exclude expert testimony from Acosta is **DENIED WITHOUT PREJUDICE**. (Docket No. 68.)

## I. Background

On August 25, 2016, Hidalgo met with an undercover agent to "drop off" a package containing approximately $139,320.00 in United States currency. (Docket No. 49.) According to the United States, this delivery "was designed in whole or in part to conceal" profits derived from an international drug-trafficking venture. (Docket No. 3. at p. 2.) CBP canine "Lusy" subsequently sniffed the package, alerting positively to the presence of a controlled substance. Id. at p. 2. Three years after the "drop off," a grand jury returned a one-count indictment charging Hidalgo with money laundering in violation of 18 U.S.C. sections 1956(a)(1)(A)(i) and (a)(1)(B)(i). Id. Trial is scheduled to commence on August 25, 2021. (Docket No. 38.) Six motions *in limine* are before the Court. (Docket Nos. 45, 62, 67, 68, 71 & 83.)

## II. Pretrial Identification of Cooperating Witnesses

Hidalgo requests that the Court compel the United States "to disclose the identity of [cooperating] witnesses and their respective counsel of record and to allow the defendants [sic] to interview any such witnesses in an impartial setting devoid of

pressure." (Docket No. 45 at p. 1.) The production of discovery is governed by Federal Rule of Criminal Procedure 16 ("Rule 16"), Federal Rule of Criminal Procedure 26.2, Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), Kyles v. Whitley, 514 U.S. 419 (1995), and the Jencks Act, 18 U.S.C. section 3500. Pursuant to well-settled precedent, "[t]here is no general right to discovery in a criminal case." Weatherford v. Bursey, 429 U.S. 545, 559 (1977); Kaley v. United States, 571 U.S. 320, 335 (2014) (holding that the United States has no obligation to "give the defendant knowledge of the Government's case and strategy well before the rules of criminal procedure — or principles of due process . . . would otherwise require").

Rule 16 generally precludes "the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500 [the Jencks Act]." Hidalgo cites Kines v. Butterworth, 669 F.2d 6, 9 (1st Cir. 1981), for the proposition that the United States and criminal defendants possess an "equal right" to "interview witnesses before trial." Id. at p. 2. Hidalgo confuses the right to conduct witness interviews with an affirmative duty to identify cooperators and other witnesses prior to trial. In Kines, a Massachusetts state trooper instructed correctional officers "not to talk with defense counsel." Id. at 8. The record before the Court is devoid of any allegation

suggesting that the United States has obstructed Hidalgo from interviewing prospective witnesses or investigating the allegations set forth in the indictment. In fact, the United States "has not identified any cooperating witnesses." (Docket No. 59 at p. 1.) Accordingly, Hildago's motion to compel the United States to allow the defense to interview cooperating witnesses is **DENIED WITH PREJUDICE**. (Docket No. 45.)

The Court is confident that the United Sates is aware of its duty to disclose impeachment or exculpatory information timely, and of the consequences of failing to do so. Hidalgo shall receive Jencks Act and Giglio material no later than three days before the commencement of trial. (Docket No. 42.) Accordingly, the United States must produce this evidence by August 22, 2021.

### III. Expert Testimony from Frank DiGregorio

The United States intends to elicit expert testimony from DiGregorio, a detective lieutenant at the Queens County District Attorney's Office and an expert in, among other subjects, the black market peso scheme. (Docket No. 53.) Hidalgo moves to exclude his testimony, contending that the United States "[failed] to provide

the actual opinion that [DiGregorio]" will offer at trial. (Docket No. 67 at p. 4.)[1]

### A. Federal Rule of Criminal Procedure 16

Federal Rule of Criminal Procedure 16 requires the United States, upon the defendant's request, to furnish "a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence in its case-in-chief." Fed. R. Crim. P. 16(a)(1)(G). This summary shall "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Id. The United States need not render a "detailed" summary, but it must provide "full notice of the actual opinions to which the [expert] intend[s] to testify." United States v. Lipscomb, 539 F.3d 32, 38 (1st Cir. 2008). For instance, in Lipscomb the United States informed the defendant of its intention to elicit testimony from law enforcement officers regarding:

> [T]he street value of the crack cocaine and that, based on their training and experience, the quantity of crack cocaine seized in this case is consistent with possession for distribution to others and not for personal use, and the methods of operation of narcotics distributors, including the utilization of firearms as part of the drug trade.

---

[1] Hidalgo argues that the designation of DiGregorio as an expert is untimely. (Docket Nos. 62 & 67.) The United States named DiGregorio as an expert on August 2, 2021, the Court imposed deadline to file the designation. (Docket Nos. 40 & 53.) Accordingly, the designation is timely.

Id. at 37 (internal quotation marks omitted). The United States placed the defendant on sufficient notice, informing him that the experts "would make conclusions regarding the presence of firearms and the connection between the quantity of crack cocaine seized from the defendant and drug distribution." Id. at 38; see United States v. Wells, 211 F.3d 988, 997 (6th Cir. 2000) (holding that the United States complied with Rule 16 because the summary "clearly stated the ultimate point of [the expert's] testimony").

The United States submitted a two page expert designation and summary, including a demonstrative exhibit purporting to represent the black market peso scheme. (Docket No. 53.) The summary states that DiGregorio:

> [W]ill provide expert testimony regarding, but not limited to, the techniques, methods, and patterns common to international money laundering cases, which are not self-evident to the jury. He will explain how drug dealers and money launderers launder proceeds to avoid detection or to 'clean' and legitimize funds. The expert will opine as to the source of unlawful activity, origins of money contracts, the black-market peso scheme, common practices employed by workers in the industry and description of their roles.

Id. at p. 1. The demonstrative exhibit is a flow chart, allegedly depicting the process of laundering drug-trafficking proceeds:



[Continue to Next Page]

(Docket No. 53, Ex. 1.)  DiGregorio is a 25 year law enforcement veteran with extensive training and experience.  (Docket No. 53, Ex. 1.)  As a member of the El Dorado federal task force, he "spent years tracking the so-called Black Market Peso Exchange, which is used to convert dollars to Colombian pesos through trading in goods."  Id. at p. 4.[2]

Although DiGregorio's credentials are impressive, the materiality in this case of the black market peso scheme is obscure at best.  The summary presented by the United States refers to this specific money-laundering operation, but provides no context.  The Court cannot discern what DiGregorio's testimony will be based on a flow chart purporting to explain the black market peso scheme.  What, precisely, is DiGregorio's opinion regarding the relationship between the money seized from Hidalgo's plastic bag and the black market peso scheme?

---

[2] The black market pesos scheme entails:

> [the commission of a] broker to exchange drug dollars for pesos. To facilitate such an exchange, a broker takes pesos from a Latin American importer (who must convert pesos to dollars to buy U.S. goods), exchanges the dollars that were acquired though illegal drug sales in the U.S. (giving the narcotics organization the pesos it needs), and then pays those dollars to a U.S. exporter on behalf of the importer.

United States v. Approximately $620,349.85, Case No. 13-3966, 2015 U.S. Dist. LEXIS 73180, at * 3 n.2 (N.D.N.Y. 2015).

Pursuant to Rule 16, the United States must "connect [the expert's] opinion to [the] particular case." United States v. Capleton, 199 F.R.D. 25, 27 (D. Mass. 2001) (holding that the United States "must disclose more" than the general "subject matter" of an expert opinion to comply with Rule 16); United States v. Duvall, 272 F.3d 823, 828 (7th Cir. 2001) (holding that Rule 16 "requires a summary of the expected testimony, not a list of topics"); cf. United States v. Espinal-Almeida, 699 F.3d 588, 614 (1st Cir. 2012) (holding that although "the government did not, in accordance with Rule 16, state what opinions [the expert] was expected to offer at trial," this oversight was "not particularly concerning given that [the expert] did not ultimately offer opinion testimony").

This Court possesses the discretion to preclude testimony pursuant to Rule 16. Fed. R. Crim. P. 16(d)(2); see United States v. Tajeddini, 996 F.2d 1278, 1287 (1st Cir. 1993) (holding that Rule 16 authorizes the district court to "impose remedial measures or sanctions including prohibiting the violating party from introducing the evidence at trial"); United States v. Barile, 286 F.3d 749, 758 (4th Cir. 2002) ("Upon finding a violation of Rule 16, the district court has discretion under the Federal Rules of Criminal Procedure to determine the proper remedy."). The United States has failed to articulate why testimony regarding the black

market peso scheme is relevant to this case. Accordingly, Hidalgo's motion to preclude expert testimony from DiGregorio is **GRANTED IN PART** and **DENIED IN PART**. (Docket No. 67.) DiGregorio may proffer testimony "regarding the techniques used by money launderers" after the United States lays a proper foundation. He may not, however, testify about the black market peso scheme.

### 1. Hidalgo's Motion to Continue Trial

Hidalgo moves to continue the trial, citing the urgent need to retain an expert in the black market peso scheme. (Docket No. 62.) Because the United States is precluded from eliciting testimony regarding this subject, the motion to continue the trial is **DENIED WITH PREJUDICE**.

### IV. Expert Testimony from Arlene Acosta

Arlene Acosta is a CBP agent and canine handler. (Docket No. 53.) According to Hidalgo, she is ineligible to offer expert testimony for two reasons. (Docket No. 68.) First, Hidalgo purportedly has "[no] idea as to what facts [Acosta] will use to reach the summarized opinions included in [sic] the government in its disclosure." Id. at p. 7. Second, Acosta's *curriculum vitae* is allegedly deficient. Id. at p. 8. The Court disagrees with both propositions.

Hidalgo's claim that he has no knowledge regarding the purpose of Acosta's testimony is specious. On January 29, 2021, the United

States produced video footage of Lusy alerting to the presence of narcotics with Acosta by her side. (Docket No. 82 at pp. 1-2.) According to the United States, Acosta "will provide expert testimony regarding, but not limited to, the training, certification, and assessment of K-9's alters to the presence of narcotics." (Docket No. 53 at p. 2.) The United States anticipates that Acosta will testify that Hidalgo's bag contained, or had been in contact with, a controlled substance. Consequently, Hidalgo cannot claim that Acosta's testimony is an ambush.

Hidalgo also claims that Acosta's *curriculum vitae* "fails to properly" set forth her credentials and experience. (Docket No. 68 at p. 9.) The Court serves as a "gate-keeper" to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." United States v. Vargas, 471 F.3d 255, 261 (1st Cir. 2006). Federal Rule of Evidence 702 ("Rule 702") provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

   (c) the testimony is the product of reliable principles and methods; and

   (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This standard is consistent with the "liberal thrust of the Federal Rules and the general approach of relaxing the traditional barriers to opinion testimony." Daubert, 509 U.S. at 588.

  Four nonexclusive factors control the Court's analysis: 1) whether the technique can be or has been tested; 2) whether the technique has been subjected to peer review; 3) the known or potential error rate; and 4) the degree of acceptance within the relevant scientific community. Lawes v. CSA Architect & Eng'rs LLP, 963 F.3d 72, 98 (1st Cir. 2020). Whether an expert satisfies these criteria is a "case-specific inquiry and . . . a question that the law grants the trial judge broad latitude to determine." Cummings v. Standard Register Co., 265 F.3d 56, 64 (1st Cir. 2001) (citation omitted). Acosta's *curriculum vitae* establishes that she is a certified canine handler with five years of experience in this field. (Docket No. 68, Ex. 1.) The Court will determine whether Acosta qualifies as an expert within the context of trial, permitting Hidalgo to *voir dire* this putative expert. Consequently, Hidalgo's motion to exclude expert testimony from Ascota is **DENIED WITHOUT PREJUDICE**. (Docket No. 68.)

**V.   Discovery Pertaining to Customs and Border Patrol Canine Lusy**

Hidalgo moves to compel the disclosure of Lusy's training log, the certification and performance tests for Lusy and Acosta, performance statistics including the rate of false positives, and any exculpatory evidence favorable to the defense. (Docket No. 71 at p. 1.) The United States has, however, produced the "CBP Canine Program – Canine Team Certifications." (Docket No. 82 at p. 1.) Pursuant to this certification, Lusy completed "tests designed to measure the ability of the dog and the handler in searching for, and indicating the presence of, concealed humans and controlled substances."  Id. at pp. 1-2.  Hidalgo also received a video depicting the moment "where Lusy altered to the presence of narcotics in the plastic bag containing approx. $140,000.00." Id. at p. 2. Because the United States has disclosed the materials requested by Hidalgo, his motion to compel disclosure is **DENIED AS MOOT**.  (Docket No. 71.)  To the extent there are additional materials bearing on the canine's reliability that have not been disclosed, the United States **SHALL** produce these materials immediately.

**VI.  The Daubert Hearing**

Hidalgo requests the Court hold a Daubert hearing before trial to "ascertain that [sic] in fact the testimony [Acosta and DiGregorio] will present is admissible." (Docket No. 83.) The

First Circuit Court of Appeals has held that a "district court does not abuse its discretion by dispensing with a Daubert hearing if no novel challenge is raised." United States v. Pena, 586 F.3d 105, 111 n.4 (1st Cir. 2009).  Hidalgo merely speculates about the admissibility of Acosta and DiGregorio's testimonies.  He has "failed to make a minimum showing of the questionable nature of the evidence." United States v. Reyes-Ballista, Case No. 18-634, 2020 U.S. Dist. LEXIS 218249, at *10 (D.P.R. 2020) (denying the defendant's request for a Daubert hearing because he "present[ed] no case-related data or expert opinion whatsoever to even quest to testimony of the government's fingerprint expert at the up-coming trial") (Delgado-Colón, J.).  Accordingly, Hidalgo's motion for a Daubert hearing is **DENIED WITH PREJUDICE.**

### VII. CONCLUSION

For the reasons set forth above, the motions for a Daubert hearing, to interview cooperating witnesses, and to continue the trial are **DENIED WITH PREJUDICE.**  (Docket Nos. 45, 62 & 83.) Hidalgo's motion to compel production of evidence relating to the CBP canine is **DENIED AS MOOT.**  (Docket No. 71.)  To the extent there are additional materials bearing on the canine's reliability that have not been disclosed, the United States **SHALL** produce these materials immediately.  His motion to exclude expert testimony from DiGregorio is **GRANTED IN PART** and **DENIED IN PART.**  (Docket

Criminal No. 19-794 (FAB)                                                    15

No. 67.)   Lastly, Hidalgo's motion to exclude expert testimony from Acosta is **DENIED WITHOUT PREJUDICE**.  (Docket No. 68.)   Trial remains set for August 25, 2021.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 19, 2021.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
